**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-23-00398-001-TUC-JAS (MSA) |
| Plaintiff, | **ORDER** |
| v. | |
| Dillyn Anthony Dust, | |
| Defendant. | |

Before the Court is a petition to revoke Defendant Dillyn Dust's pretrial release. (Doc. 63.) The Court finds that Defendant violated his conditions of release and will order that he be detained pending sentencing.[1]

**I.  Background**

Defendant is charged with numerous firearm and drug offenses. (Doc. 27.) Last year, he pleaded guilty to engaging in the business of dealing firearms without a license. (Docs. 58, 59, 60.) His sentencing hearing is presently set for March 20, 2024. (Doc. 62.)

At his initial appearance in March 2023, Defendant was ordered released on his own recognizance after posting a $2,000 bond. (Docs. 3, 4, 6.) The release order provides, as conditions of release, that Defendant "shall not possess or attempt to acquire any firearm" and "shall not commit any federal, state, tribal or local crime." (Doc. 6.) In August 2023, the Government moved to reopen the detention hearing, alleging among other things that

---

[1]  The decision whether to revoke pretrial release is to be made by a "judicial officer." 18 U.S.C. § 3148(b). A magistrate judge is a judicial officer, so the undersigned issues an order rather than a recommendation. *Id.* §§ 3041, 3156(a)(1).

Defendant had violated his conditions of release by possessing firearms. (Doc. 29.) The Court reopened the detention hearing over Defendant's objection. (Docs. 33, 34.) At the reopened hearing, the Court placed Defendant on a zero-tolerance policy and admonished him that further violations would result in his arrest and detention. (Doc. 36.)

In January 2024, pretrial services filed a petition to revoke Defendant's pretrial release. (Doc. 63.) The petition alleges that, on December 24, 2023, Defendant committed several state-law crimes, including aggravated assault on a police officer, unlawful flight from law enforcement, racing, reckless driving, and excessive speeding. (*Id.*) The Court issued a warrant, and Defendant was taken into federal custody after his release from state custody. (Doc. 66.) Defendant denied the petition's allegations, so a revocation hearing was held on February 7, 2024. (Docs. 67, 69, 72.)

At the hearing, the Government called Defendant's pretrial services officer, Fred Higgins. Officer Higgins testified that Defendant initially performed well on supervision. (Tr. 4.)[2] He explained, however, that Defendant was arrested by state law enforcement on or around January 17, 2024. (Tr. 12.) Based on his conversation with Trooper Nash (who witnessed Defendant's alleged crimes), and his review of Trooper Nash's report, Officer Higgins described the relevant facts as follows: On December 24, 2023, Trooper Nash saw two BMWs racing on Valencia Road, one of which did not have a license plate. (Tr. 7–8.) He was familiar with the BMW that did not have a license plate and had seen Defendant drive it multiple times in the past. (Tr. 8, 10.) The BMWs were racing at speeds in excess of 100 mph, far over the 45-mph speed limit. (Tr. 8.)

Trooper Nash, who was uniformed and driving a patrol vehicle, followed the BMWs to a gas station. (Tr. 9.) The gas station in question is a known meetup spot for street racers. (Tr. 9.) There, Trooper Nash parked his vehicle directly in front of the BMW without a license plate. (Tr. 9.) He then activated his vehicle's overhead lights and stepped out. (Tr. 9.) The BMW reversed at a high rate of speed and then accelerated forward. (Tr. 9.) The BMW drove directly towards Trooper Nash, although there were other routes it could

---

[2] "Tr." refers to the transcript of the revocation hearing. (Doc. 75.)

1  have taken. (Tr. 9–10.) As it passed by, Trooper Nash saw Defendant in the driver's seat
2  and Defendant's girlfriend in the passenger seat. (Tr. 10.) After Defendant came close to
3  losing control and hitting other, parked vehicles, he turned off the BMW's headlights and
4  sped away on Valencia Road. (Tr. 10.)

5  Trooper Nash did not follow but instead talked with the driver of the other BMW.
6  (Tr. 11.) The other driver identified Defendant as the other racer by picking his photograph
7  out of a six-person lineup. (Tr. 11.) The other driver also confirmed that Defendant's
8  BMW, which was painted white, had previously been painted blue. (Tr. 11.) On or around
9  January 17, 2024, state troopers arrested Defendant for the above-listed offenses. (Tr. 12.)
10 At the time of arrest, Defendant was in possession of a key fob for his girlfriend's white
11 BMW. (Tr. 12.)

12 Defendant did not testify or present any witnesses. At the conclusion of the hearing,
13 the Court took the matter under advisement.

14 **II.   Legal Standard**

15 "A person who has been released under [the Bail Reform Act], and who has violated
16 a condition of his release, is subject to a revocation of release, an order of detention, and a
17 prosecution for contempt of court." 18 U.S.C. § 3148(a). An order of revocation is proper
18 only if it is entered after a hearing and is based on certain findings. *Id.* § 3148(b). First, the
19 Court must find that there is either "probable cause to believe that the person has committed
20 a Federal, State, or local crime while on release" or "clear and convincing evidence that
21 the person has violated any other condition of release." *Id.* § 3148(b)(1). Second, the Court
22 must find either that "there is no condition or combination of conditions of release that will
23 assure that the person will not flee or pose a danger to the safety of any other person or the
24 community," or that "the person is unlikely to abide by any condition or combination of
25 conditions of release." *Id.* § 3148(b)(2).

26 **III.  Discussion**

27 The Court finds that there is probable cause to believe that Defendant committed a
28 state-law offense. 18 U.S.C. § 3148(b)(1)(A). Probable cause exists when the "facts and

circumstances [are] 'sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). This "is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

Trooper Nash's observations, as recounted by Officer Higgins, establish probable cause to believe that Defendant committed, at the least, street racing and unlawful flight from law enforcement. As to street racing, Arizona law makes it illegal for a person to "drive a vehicle or participate in any manner in a race." A.R.S. § 28-708(a). Trooper Nash saw two BMWs speeding excessively and followed them to a known street-racer hangout; there, he saw Defendant in one of the BMWs; and the other driver identified Defendant as the "person he was racing." The elements of unlawful flight under A.R.S. § 28-622.01 are that "(1) the defendant, who was driving a motor vehicle, wilfully fled or attempted to elude a pursuing official law enforcement vehicle, and (2) the law enforcement vehicle was appropriately marked showing it to be an official law enforcement vehicle." *State v. Martinez*, 284 P.3d 893, 895 (Ariz. Ct. App. 2012). Trooper Nash parked directly in front of Defendant's car, activated his patrol vehicle's lights, and stepped out of the vehicle while in full uniform; and Defendant responded by reversing, by accelerating forward in a reckless manner, and by shutting his headlights off and speeding away.

Next, the Court finds that, under the relevant factors, there are no conditions of release that will assure that Defendant will not flee or pose a danger to the safety of any other person or the community. 18 U.S.C. § 3148(b)(2)(A). The first factor is "the nature and circumstances of the offense charged." *Id.* § 3142(g)(1). Defendant is charged with numerous firearms and drug offenses. These types of offenses are specifically mentioned in the statute, indicating that they are especially serious and support detention. The second factor is "the weight of the evidence against the person." *Id.* § 3142(g)(2). Defendant has pleaded guilty to one of the firearms offenses. His sworn statements about his own conduct are strong evidence that he is dangerous. This factor also favors detention. The third factor

is the "history and characteristics of the person." *Id.* § 3148(g)(3). Defendant is a lifelong resident of Arizona and has family ties here. However, he has inconsistent employment, he had state-court cases pending when he picked up his federal charge, and he was pending federal sentencing (and was on a zero-tolerance policy) when he picked up his new state-court charges. This factor strongly supports detention. The last factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* § 3142(g)(4). Defendant is an alleged drug and firearms dealer. He is an alleged street racer who, rather than be ticketed or arrested, chose to drive his vehicle at a police officer and then speed away with his headlights off. He is a danger to the community. This factor, along with all the others, supports detention.

Finally, the Court finds that Defendant is unlikely to abide by any condition or combination of conditions of release that the Court might set. 18 U.S.C. § 3148(b)(2)(B). The allegations described in this Order, in the petition to revoke, and in other filings (*see* Doc. 29) paint a picture of a person who does not care about the law or the safety of others. The Court is certain that, if Defendant were released, he would violate his conditions.[3]

At the revocation hearing, Defendant raised various challenges to the Government's presentation. Defendant complains that he did not have the opportunity to cross-examine Trooper Nash, and that Trooper Nash's statements are hearsay. This is true, but it does not affect the Court's conclusions. The Federal Rules of Evidence—including the rule against hearsay—do not apply to hearings concerning pretrial release. Fed. R. Evid. 1101(d)(3). Indeed, at a detention hearing, the Government may proceed entirely through proffer,

---

[3] A few federal circuit courts have held that the 18 U.S.C. § 3148(b)(2) findings must be supported by a preponderance of the evidence. *See, e.g.*, *United States v. Gotti*, 794 F.2d 773, 778 (2d Cir. 1986). The Ninth Circuit has not yet decided whether that is the correct standard. If it is, it would be satisfied in this case.

Relatedly, Defendant seems to argue that a § 3148(b)(1) finding (that the defendant violated a condition of release) must be supported by a preponderance of the evidence. That is the standard applicable to alleged violations of probation or supervised release. *See United States v. Ramirez*, 347 F.3d 792, 798 & n.5 (9th Cir. 2003); *United States v. Perkins*, 67 F.4th 583, 615 (4th Cir. 2023). As the statute makes clear, a defendant's *pretrial release* can be revoked based on "probable cause" that he committed a new offense. 18 U.S.C. § 3148(b)(1)(A). This standard is less demanding than the preponderance standard. *United States v. Krupa*, 658 F.3d 1174, 1177 (9th Cir. 2011) (quoting *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc)).

*United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986) (per curiam) (citations omitted), so Trooper Nash did not need to be available for cross-examination.

Defendant also argues that the Government's hearsay evidence is insufficient to clear the probable-cause bar. However, Officer Higgins personally spoke with Trooper Nash and confirmed that Trooper Nash's report was consistent with their conversation. For that reason, the Court finds Officer Higgins's testimony reliable.

## IV. Conclusion

The Court "shall enter an order of revocation and detention if, after a hearing," it makes the findings described above. 18 U.S.C. § 3148(b). Accordingly,

**IT IS ORDERED** that Defendant's conditions of release (Doc. 6) are **revoked**. Defendant shall be detained pending his sentencing hearing.

Dated this 12th day of February, 2024.

_____
Honorable Maria S. Aguilera
United States Magistrate Judge